21-838, 21-838. Good morning.  May it please the Court, counsel, Brian Spears and Leslie Cahill for Vachon-Lewis. Your Honors, in this case, the district court improperly applied a categorical rule that a person residing in a multi-tenant dwelling can never have a Fourth Amendment interest in common areas. The district court set forth a ruling that, if not corrected, has grave consequences for tenants of apartment buildings, multifamily units, and the like, insofar as the Court categorically held that there is no privacy interest in common areas and the curtilage of these residents. The district court held specifically as follows. Because, this is in quotes, because the back porch was a common area, Lewis does not  have a privilege, period, end quote. And that is effectively her ruling. That is as categorical as it gets. And yet, in the Second Circuit, and also by virtue of Supreme Court case law, there is no categorical rule of this nature. To the contrary, whether assessing common areas or curtilage, this Court and the Supreme Court have called upon the district courts to conduct individualized inquiries. Well, they didn't. I mean, the district court did use the words that you said, but didn't the district court actually take, undertake a fairly detailed factual analysis of the setting? Who owned the home? She noted that the doors were locked to each of the individual's apartments. Mr. Lewis's apartment on the second floor had a locked door, and that individuals who were coming to visit the aunt who owned the house on the third floor were free to walk through the back porch, that it wasn't particularly enclosed. She noted it was the back porch. And it seemed to me that she was finding a fact that it was commonly used and available to all the residents, as well as really to visitors to any of the apartments. So it seemed to me that she wasn't really acting on a, you know, a blunt rule, but she was looking to our cases such as, you know, involving shared parking areas and other shared spaces and looking for a diminished, having that potentially rule out curtilage and certainly a diminished expectation of privacy. Isn't that a fair characterization of what the district court did? Respectfully, Your Honor, I don't think the district court analyzed it to that level. I mean, there are references by the district judge to, in particular, the description of the property. There were photographs that were entered into evidence in connection with the motion to suppress. And she described what she saw in those photographs. But her analysis really is specifically based on the fact that this was a common area. But aren't the facts I just laid out for you sufficient to conclude that, in fact, Mr. Lewis didn't have a reasonable expectation of privacy and it was not his curtilage because there were three separate units that were locked, each locked and operating separately inside the house, regardless of the family relationship between the people? Well, no, Your Honor. I mean, in our view, the family relationship is highly significant here. And so far as the — so it basically was a three-unit building. At each — in each of the units, family members were residing. And so — But those were each locked separately, weren't they? They were, Your Honor. But when you look at the case law surrounding this, for example, United States v. Alexander, it — respectfully, the property in the area that was searched does fall within the definition of curtilage. This case is very similar to the facts in Alexander, where the court considered — Judge Lynch wrote a very thoughtful opinion on this, and Your Honor, Judge Carney participated on that panel as well. And in Alexander, the curtilage analysis focused on the back area of the house. But in the — that was not a multifamily dwelling, was it? That's correct, Your Honor. But there is — But doesn't that make all the difference? I respectfully know, Your Honor, this Court has not held that curtilage analysis doesn't apply in the context of a multitenant dwelling. It hasn't held that. How about expectation of privacy? Well, under expectation of privacy, the Court has held, in United States v. Bedell in particular, that you have to conduct an individualized — I'm just looking at language from Jones, our decision in Jones. This is a quote. Our precedents establish that because an individual has no power to exclude another from a common area, a defendant has no legitimate expectation of privacy in a common area that is accessible to the other tenants in the multifamily apartment building. Yes, sir. Are you saying that either factually this wasn't a multifamily apartment building or that the common area was not accessible to other tenants, or are you saying that's not a categorical rule? What we're saying is that Jones and Holland, which are the cases that the district court relied on, do have language that would suggest that a common area in a multitenant dwelling does not give rise to an expectation of privacy, but that other case law from this circuit and more recent cases, such as United States v. Bedell, United States v. Sykes, United States v. Riley, all emphasize the importance of conducting an individualized inquiry. And so it's not — It's not the district court's inquiry that you would describe as not individualized and tailored to Lewis's case. So the judge, in our view, did nothing more than characterize what was seen in photos that were submitted in connection with the motion. And so — It was characterized and then confirmed, or at least not objected to, but I think actually confirmed by counsel. Just as to what was depicted in the photographs. But what was also depicted in the photographs, and this is part of the record, just as in Alexander, there was a grill, there was weightlifting equipment, all within a couple of feet of the back porch. And on the porch, there were also personal items, including a mop, charcoal, and other items that would suggest that — You're describing the basements of many apartment buildings in New York City. Right. And cases — So does that make the basements not a common area that — Well, your Honor, it's a great question. And the cases have recognized that basements in multi-tenant dwellings can be a place where people have a reasonable expectation of privacy. The Sixth Circuit in United States v. King addressed that very question, which is very poignant to this case as well. I do — I suppose there was a reason the government included the basement specifically in the warrant. Right. Right. But it's also very — you know, our view is that it's very significant that the government didn't include the back porch. Right. And so if I — That's your argument, yes. That's our argument. Right. Right. Your Honor, it's just — That's what it is. Just to drive the point home further, if you look at the district court's opinion, where she sets forth, in our view, a categorical rule, and then she also incorporates by reference the parts of the transcript on which her ruling is based, and I submit to the Court that there is no individualized inquiry based on the ruling and the language that she's expressly incorporated. She didn't wrestle with the questions about the personal items that were there or the fact that other tenants were family members. So that other tenants were family members, I think, was not raised by defense counsel. It comes up after she rules here as part of the affidavit for the Franks hearing, if I'm not mistaken. So what's the obligation of the district judge to consider facts not raised but that become known post-ruling? She's to sui sponte, consider those after the fact? Well, so what was raised by the defendant was a privacy interest in the back porch. That was very specifically raised. The government, in response to the motion to suppress, then draws the district court into this categorical analysis by, you know, quoting from Holland, quoting from Jones, and essentially saying, common area, no expectation of privacy, end of story. And so that drew the court into that categorical analysis. And so our view is that it's absolutely raised properly by the defense and through the motion and his assertion of it. But do you agree, just to pick up on Judge Nathan's question, that our focus with respect to the suppression hearing in the district court's decision not to suppress is purely on the facts before the district court at the time of the suppression hearing? Yes, Your Honor. And not what happened at trial and not what happened subsequent to that? I agree with that, Your Honor, yes. I see that my time is up. May I just ask you about the obstruction of justice enhancement? Yes. Can you just briefly touch on that? Yes, Your Honor. Thank you. I'm happy to have an opportunity to address that. I appreciate letting me go over the time limit here. There is a real issue with respect to the application of the obstruction of justice enhancement here. The district court essentially read the affidavit to say something that it doesn't say. The affidavit stated, and the defendant submitted this affidavit in connection with the motion to suppress, it said that I did not stay or occupy the second-floor apartment. That's what he said. The district court at the time. Well, during that particular period. Yes, the last week of May. That's the important part. Yes, Your Honor, during the last week of May of 2017. Right. Otherwise, you would have lost, lost. Okay. Right. But what the district court said repeatedly throughout the sentencing record was that she was reading that affidavit as saying he was never there, and she's very definitive that the affidavit was asserting that he was never there. And that's not what the affidavit said. And you also have to look at the record. What's the relevance of that testimony except to suggest that he wasn't there? Your Honor, our position is that the basis of the obstruction of justice enhancement was that that statement in the affidavit was false. That's what the district court said. But it wasn't false because he didn't say what she was. I'm asking what is it offered for? What is the relevance of it except to suggest by inference that he wasn't there? Well, as was clarified by his counsel at the time of sentencing, what he was, and actually this comes up in the suppression hearing, he was saying that he had been there to change his clothes, that he had been there for a barbecue, that he had stopped by the area on several occasions, that he wasn't saying definitively that he was never there. I think the relevance of all of that was that because of his limited interaction with that location, he did not believe that the informant could have possibly observed the things that he observed. Really to impeach the informant. Right. But that really, right, that question that goes to materiality. What we're focused on in this appeal is the question of whether there was a falsehood. And the way that the district court. Well, I'm going to help you here a little bit with this question. Isn't the real question whether the false, whatever, however you want to describe it, whether it was sufficiently clear as a false statement or whether it was too vague to support an enhancement. Isn't that the question? That is correct, Your Honor, under Agudelo and the Pena decision. If there is some ambiguity in the affidavit, then the obstruction of justice enhancement does not apply. And the purpose of that is to avoid having a chilling effect on defendants asserting Fourth Amendment rights through motions to suppress. If there are no further questions, I'll. And you've reserved some time for rebuttal. I have, Your Honor. Thank you. The government. Good morning. May it please the Court. My name is Jocelyn Courtney Katsanas, and I represent the United States of America on this appeal. The district court correctly determined that Vachon-Lewis did not have a reasonable expectation of privacy in the porch that he shared with two other units in a three-unit multifamily dwelling. And the district court did not abuse its discretion in declining to hold an evidentiary hearing on this topic when there were no disputed issues of fact. Does the government embrace the categorical rule that there can be no Fourth Amendment protection in shared spaces in a multifamily unit? Or is the government's view more nuanced that there are factual circumstances that could permit for a finding of Fourth Amendment protection? Your Honor, I think the government's view is the latter. It's more nuanced, and there are factual circumstances that can permit that. Here, as Judge Carney was pointing out, there was an extensive inquiry into the factual circumstances at issue here. That includes assessing whether the various departments were locked, assessing who had access to the porch. To the extent there wasn't a further evidentiary hearing on this, it's because the parties agreed on exactly how it was laid out, exactly who had access. And this Court has never held that there is some requirement that you must explicitly go through the property baseline rights test and then the done factors before you get to what was appropriate here, determining that in a shared common space, Vachon-Lewis had no reasonable expectation of privacy in the porch. With regards to the family relationship issue, I agree with, I think, as Judge Nathan was saying, that this wasn't raised, and it wasn't properly before the Court at the time of the suppression hearing. But I would also note that to the extent there is case law on this, you have the Sixth Circuit in United States v. King. You have the Eighth Circuit in United States v. Mendoza. It's not just that there is a relationship between relatives. It's who has access to the house. And in United States v. King, the evidence was that the family had free reign over the entire house. That was not the case here. You had three separate units locked, no free reign over the entire house. With regards to whether this was the extent to which this was raised below, I would just put before the Court, I mean, the question as it's framed now, whether Vachon-Lewis's apartment on the second floor included the curtilage of the porch was not raised below because if it was part of the apartment, it arguably would have been under the search warrant for the apartment. And that is – Is that – I mean, is there law that you can point to – there's a logic to that. But is there law that you can point to that says a search warrant covering an apartment or covering a house, particular residence, includes the curtilage within what is authorized to be searched, or must the warrant specify that curtilage is included? So, Your Honor, the government cited two circuit court opinions in its brief, United States v. Cannon in its Ninth Circuit case, United States v. Bennett, I believe it is the Sixth or Eighth Circuit. But as far as I have been able to determine in the research, there are six circuit courts right now, not this Court, that have held that even if a warrant does not explicitly state curtilage, it encompasses the curtilage of the dwelling. However, those are all decisions encompassing single-family dwellings. So, again, showing why perhaps the curtilage analysis is just not as applicable here when it comes to a multifamily dwelling. Defense counsel talked a little bit about the photographs. I just wanted to point out for the Court, if you look at the photographs and if you're assessing this, as we argued in our brief, even if you were to assess this under the Dunn factors and you're looking at what is the use of the porch, you're trying to understand is this porch associated with the intimate activities of home life. There's debris on the porch. There's trash on the porch. There's nothing suggesting that this is a private area. It's not enclosed. It's not concealed. And, again, the testimony is that anyone entering the apartment or leaving the apartment had free reign to the house as well as the various units within the apartment. It was a back porch, not a front porch, though, right? That is some enclosure nearby. That is correct, Your Honor. It was a back porch. It was where the parking lot and the area of the cars were, so people who came up to the house would have gone through, and when he exited, he would have gone through, but it was a back porch. And then with regards to the citations, again, by defense counsel to Bedell and Sykes, I mean, those are summary orders from this Court from 2008 and 2009 that are just talking about, so they're not recent or post-Florida v. V. Hardinas, and they're just talking about whether or not there should be a per se assessment, which we're saying that there shouldn't be, and here the district court did that individualized inquiry. So moving on to, I think Your Honor had some questions. Unless there's more questions on this first issue, I would move on to the obstruction of justice questions. So with regards to the obstruction of justice enhancement under 3C1.1, here the district court correctly applied the law. I don't think there's any dispute about that, and it looked at a sworn affidavit that was submitted by Vishon Lewis in support of his motion to suppress, which said, I did not occupy nor stay at this resident during the last week of May, nor did I have any visitors at this resident. And then the next paragraph after that is, therefore, the CI is not telling the truth. I'm paraphrasing on this last paragraph. So it's relevant to that. So it's relevant to that. What is it about the first part of that? Tell me, what is it that I can look to that's demonstrably false and very clearly false, a false statement? What's demonstrably false is I did not occupy nor stay, nor have any visitors. So the evidence that he occupied or stayed is when the – During that particular week? During that particular week of June is, one, when they go there, the apartment looks lived in. Two, there's – he admits – This is – go ahead. Keep going. Okay. So, two, he admits in the post-arrest interview that he's resided in that apartment. No statement that he's ever left that apartment. Three, in that week, he's seen at that apartment. Four, the GPS coordinates put him again and again at that apartment. Okay. So that is maybe a fact that directly puts him in that apartment throughout the period? Throughout the period. Four, he has text messages to visitors saying, I'm here, come here. So indicating the second portion of that sworn affidavit, nor did I have any visitors. And then there's also – I don't think you can argue that it's vague when, aside from the sworn affidavit, you have the hearing where the district court is saying to defense counsel, I'm asking for an attorney proper here. Can you confirm, was he not residing at this house? And defense counsel says, yes, he only went back to change his clothes. So that – and the defendant is sitting right next to him when he's saying that. So there's no ambiguity. And the district court, in its position as the fact finder who had the opportunity Wait. Could you say that again? What does defense counsel say? The defense counsel says – so it's in the hearing where they're asking for the proper. And the defense counsel says – this is not a direct quote, but he only returns to change his clothes. So, I mean, that just wasn't the evidence that the district court had before. The defense counsel's statement is similar to what was said in the affidavit. Exactly. That he was not staying there. Exactly. And what about the visitor? I thought he – when the search warrant was executed, he was there in the room with his girlfriend or former girlfriend and a child. Is that right? That's also true, Your Honor. Yes, he was there with his girlfriend and a child when the search warrant was executed. I mean, in any event, the government is also arguing that to the extent the court was error on the obstruction of justice, the court could also find that it was harmless error. And that's in light of the way that the district court sentenced this, considering the mandatory six years on the 924C count, the third – and then the felon in possession count. With the obstruction of justice, it was looking at a guideline range of 57 to 71 months. Without it – on the felon in possession count. Without it, it was looking at a range of 46 to 57 months. It sentenced the defendant to a below-guideline sentence of 30 months, below guidelines in both ranges. And when it laid out its specific Section 3553A sentencing factors, it specifically said all of the mitigating and aggravating factors from the defendant's background, there was nothing that it tied the sentence to in terms of the obstruction of justice. So to the extent you can ever have harmless error on sentencing, if this enhancement had not been applied, the record indicates that the district court would have given the exact same sentence. Thank you very much. Thank you, Your Honors. Unless you have any further questions, we rest on our papers and would ask this Court to affirm the district court's decisions. Thank you, Your Honors. So first of all, with respect to the Fourth Amendment issue, I just want to highlight that, you know, the procedural posture of this, of course, was that the district court said, you don't have standing, we're not going to have a hearing over this. So that sort of also shut down the ability to really fully develop what was a plausible claim. Counsel, can you respond to the question I asked the government? If there's law on the question of whether a warrant listing a residence necessarily includes the ability to search the curtilage or whether the warrant would need to specify the curtilage as within its search parameters? Yes, Your Honor. This Court has never held that there is some sort of implied right for law enforcement to search curtilage. This Court has not held that. There are some cases, as the government cited in its brief, that talk about this concept. They are single-family, not multi-family residences. And also out-of-circuit cases.  Out-of-circuit. Yes, Your Honor. Out-of-circuit. But what's interesting about those cases is that they were very broad search warrant authorizations, you know, for premises, for residence, the two cases that the government cites, that was the language used. And so here, where the warrant is for multi-family residence and specifies second floor and basement, I think it's very dangerous to go down the path and say... Your view, and I think it's shared by the government, is that we don't even have to deal with that particular issue. You do not have to deal with that issue. That's correct, Your Honor. Because in our view, there was a Fourth Amendment interest in the back porch. And so that's our position on it. So with respect to the obstruction of justice... Well, you heard the government go down a litany of facts. So if you address in particular the GPS issue, that would be very helpful for me. Yes, yes, of course, Your Honor. The GPS issue really just begs the question. The GPS data show that the defendant was near 200 Winthrop or somewhere near the New Haven Green. That's what the evidence is in the record. It doesn't say he was inside the house. And he didn't deny that he was inside the house. The affidavit to Your Honor's question previously was ambiguous, so our view is the enhancement shouldn't apply. But importantly, if we look at Appendix 120, and I submit to the A120 and on to A121, I submit that the Court must consider the statements by defense counsel explaining the affidavit since he was the drafter. And the clarification was, quote, he did not go to the place. I'm sorry. He did go to the place. I know he was out front. I know he went out and changed clothes. He did not stay there. He still had his residence there. He was staying at other places. And then on to A121, he did return to the house, Your Honor. The proffer is to change his clothes. So it's not the equivocal statement that the District Court relied upon. The basis of the enhancement in her mind was an assertion that my client was never there. It's not what the affidavit says. And to the extent that there's an ambiguity, the enhancement doesn't apply. And when read in light of his attorney's clarification, there's no way that the District Court could possibly come to the conclusion that he was saying he was never there. And what about the visitors? Well, there's less analysis of that, Your Honor. No. She says that I was going to ask how he could say there wasn't any visitors. I want to have a better understanding if he were to testify. I mean, he was, when the search was conducted on June 1st, he was there with a visitor, I think. Yeah. My recollection is that there was a reference to a barbecue occurring as well. They were upstairs in the apartment. Pardon me? They were together, right, and with a child. At the time of the search was executed on June 1st. That's right. Yes, Your Honor. But does the June 1st fall outside the last week of May? I thought the last week of May encompassed. Respectfully, Your Honor, that's where the ambiguity comes in. So I don't think anyone was taking the position that he wasn't there when the law enforcement arrived and found him there. And that excludes the visitor, the importance of the visitor then? Yes, Your Honor. Correct. Thank you. Just quickly on the question of harmless error. For harmless error to apply here, the district court would need to unequivocally say that she would have imposed the same sentence even if she hadn't found that the obstruction adjustment enhancement applied. She didn't make that record. She didn't say that. So with all respect, harmless error analysis does not apply. If there are no further questions, Your Honor, thank you very much. We request that the judgment be reversed. Thank you very much. We will reserve the decision.